287 P.3d 836

**STATE of Arizona, Appellee,**

v.

**Ben Wesley LONEY, Appellant.**

**No. 1 CA–CR 11–0860.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 6, 2012.

David Goldberg, Attorney at Law by David Goldberg, Fort Collins, CO, Attorney for Appellant.

## OPINION

BROWN, Judge.

¶ 1 Ben Wesley Loney appeals from his convictions and resulting sentences on two counts of sexual conduct with a minor. For the following reasons, we affirm both convictions and his sentence on Count Three but we vacate and remand for resentencing as to Count Two.

## BACKGROUND [1]

¶ 2 In May 2011, Loney was indicted on one count of aggravated luring of a minor (Count One), a class two felony, and two counts of sexual conduct with a minor, both class six felonies (Counts Two and Three). The State presented the following evidence at trial.

¶ 3 In 2009, Loney, age fifty-one, was hired to perform maintenance work on apartments that A.C. managed. On occasion he also did handyman work at A.C.'s personal residence. A.C. discussed with Loney the possibility of the victim, A.C.'s sixteen-year-old granddaughter, coming from Minnesota to live with A.C. in Arizona. Loney assured A.C. he would "help out" and they would "make it work."

¶ 4 Soon after the victim moved to Arizona, the frequency of Loney's visits to A.C.'s home increased and he started "coming over and watching movies." Loney also drove the victim home from work because A.C. had trouble driving at night. Loney sometimes gave the victim foot rubs after work while they were watching movies and "used the straightener on [the victim's] hair" to help her get ready for school. At one point in March 2010, A.C. found out Loney had given the victim alcohol and prohibited him from seeing the victim, but Loney eventually regained A.C.'s trust and resumed his contacts with the victim.

Thomas C. Horne, Arizona Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

1. We view the evidence presented at trial in the light most favorable to sustaining the convic-

tions. *State v. Gallegos*, 178 Ariz. 1, 9, 870 P.2d 1097, 1105 (1994).

¶ 5 The victim testified that Loney had given her cigarettes, marijuana, alcohol, and two pairs of "thong underwear." She also stated that following the alcohol incident, Loney threatened to kill her if she "told anyone about him again." As relevant to Count Two, the victim testified that one evening during the first week of May 2010, Loney started rubbing her feet and then placed his fingers inside her vagina. She also explained how Loney showed her a pornographic video and expressed his desire to have sex with her. As relevant to Count Three, the victim testified that on another occasion later that month Loney again touched her vagina, both digitally and orally.

¶ 6 Officer Patterson testified as an expert on behalf of the State. He explained that sexual predators engage in certain patterns or techniques. One common method, known as grooming, is intended to make victims feel comfortable and ultimately not resist the advances of the sexual predator. Grooming includes gaining access to victims by offering gifts, incentives, affection, and recognition. He explained further that sexual predators form an avenue of access to a victim by developing an environment of trust with the victim's family. He also noted that some predators use threats of violence or ridicule victims in order to control them.

¶ 7 At the close of the State's case, the court granted Loney's motion for judgment of acquittal on Count One. The jury then found Loney guilty on Counts Two and Three. After finding both counts were non-dangerous but repetitive offenses under Arizona Revised Statutes ("A.R.S.") section 13-703(A) (2012) [2], the court sentenced Loney to the presumptive one-year prison term for each count, to be served consecutively. Loney timely appealed.

## DISCUSSION

### A. Prosecutorial Misconduct

¶ 8 Loney argues the State committed prosecutorial misconduct during closing argument when the prosecutor referenced Offi-

cer Patterson's testimony about sexual predators. Because Loney failed to make a proper objection at trial, we review for fundamental error only. *State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

¶ 9 "A defendant seeking reversal of a conviction for prosecutorial misconduct must establish that (1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *State v. Dixon,* 226 Ariz. 545, 549, ¶ 7, 250 P.3d 1174, 1178 (2011) (internal citation omitted and quotations omitted.) Prosecutorial misconduct "is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal." *Pool v. Superior Court in and for Pima County,* 139 Ariz. 98, 108–09, 677 P.2d 261, 271–72 (1984). Accordingly, as a threshold issue we consider whether the prosecutor's remarks were intentionally made for an improper purpose.

¶ 10 During closing argument, defense counsel attacked the credibility of the victim. In rebuttal argument, the prosecutor commented as follows:

Ladies and gentlemen, this grown man, a man who you know to be in his early 50's, stuck his fingers inside a minor's vagina, not once, but twice; and he had oral sex with her. This man is a predator.

You heard testimony from Officer Patterson yesterday . . . regarding the characteristics of sex offenders. This man preyed upon a minor in order to gain sexual access to her, and that is exactly what he did.

He manipulated her by giving her . . . , marijuana, cigarettes, alcohol. He gave her foot rubs. He straightened her hair. He gave her rides. This was all a manipu-

2. We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

lation of her, to gain access to her; and he got exactly what he wanted.

The defense yesterday had the nerve to ask the minor in this case why she didn't decline ... the cigarettes or the alcohol. Shame on them. She's the child; he's the adult.

The question here is why was he giving her those items in the first place. This is just an attempt by the defense to deflect attention from the defendant onto the minor. This case is about the defendant and what he did wrong.

So when you're asking ... yourselves why he gave her this stuff, refer back to Officer Patterson's testimony about the characteristics of sex offenders. That will help you answer that question.

Loney argues the prosecutor's comments improperly asked the jury to find him guilty because he fit the sexual predator profile testified to by Officer Patterson. We disagree because the prosecutor's effort to draw comparisons between Loney and the sexual predator profile fell within the proper scope of closing argument. *See State v. Hughes,* 193 Ariz. 72, 85, ¶ 59, 969 P.2d 1184, 1197 (1998) (noting that "[c]ounsel can argue all reasonable inferences from the evidence."); *State v. Bible,* 175 Ariz. 549, 602, 858 P.2d 1152, 1205 (1993) (recognizing that counsel may "summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions."); *State v. Amaya–Ruiz,* 166 Ariz. 152, 171, 800 P.2d 1260, 1279 (1990) (stating that counsel is given "wide latitude" in closing arguments to comment on the evidence).

¶ 11 Additionally, defense counsel attacked the victim's credibility during closing argument by suggesting she failed to (1) accurately recount the alleged incidents in police reports; (2) tell A.C. about the pornographic film; and (3) timely report Loney's sexual advances in spite of having regular access to a telephone. Defense counsel also suggested the victim fabricated Loney's threats against her. The prosecutor could properly respond to those suggestions during rebuttal argument. *See State v. Martinez,* 130 Ariz. 80, 82, 634 P.2d 7, 9 (App.1981) (concluding that

prosecutorial comments which are a fair rebuttal to areas opened by the defense are proper).

¶ 12 Contrary to Loney's assertion, *State v. Hardwick,* 183 Ariz. 649, 905 P.2d 1384 (App. 1995), is not helpful to his claim of prosecutorial misconduct. In *Hardwick,* the prosecutor relied on an unadmitted exhibit that purported to list the traits of child molesters. *Id.* at 653, 905 P.2d at 1388. The exhibit was not supported by any expert testimony nor was any foundation given as to its reliability. *Id.* Over the objection of defense counsel, the prosecutor cross-examined the defendant as to the listed characteristics and then asked him, "based on identifying pedophiles, you are a classic child molester, isn't that true?" *Id.* (emphasis omitted). We concluded the trial court committed reversible error because the evidence was not properly admitted and the prosecutor's remarks during closing argument about the traits of pedophiles were directly tied to the inadmissible document. *Id.* at 654, 905 P.2d at 1389.

¶ 13 Unlike the inadmissible evidence in *Hardwick,* the jury in this case heard the admissible testimony of Officer Patterson regarding characteristics of sexual predators. Because the prosecutor was permitted to argue all reasonable inferences based on the testimony of Officer Patterson, she could properly argue that Loney fit the profile of a sexual predator. *See Bible,* 175 Ariz. at 602, 858 P.2d at 1205 (noting that it was permissible for a prosecutor to argue during closing that a victim may have been tormented because the evidence at trial "would permit a jury to infer that she had been subject to both physical and emotional torment."); *see also Divine v. State,* 947 So.2d 1017, 1022 (Miss.App.2007) (finding no misconduct where prosecutor referred to the defendant as a sexual predator in closing arguments because it was a "fair argument based upon the testimony and the evidence.") Thus, the prosecutor's comments were not improper.

### B. Repetitive Offenses

¶ 14 Loney argues that the trial court erred in sentencing him to consecutive flat term sentences. Specifically, Loney asserts that because the court misinterpreted

A.R.S. § 13–703(A), prison was not mandatory for at least one of the convictions. Because Loney failed to raise this argument in the trial court, we review for fundamental error only. *See State v. Trujillo*, 227 Ariz. 314, 321, ¶ 32, 257 P.3d 1194, 1201 (App. 2011). "To prevail under this standard of review, [Loney] must establish both that fundamental error exists and that the error in his case caused him prejudice." *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607.

¶ 15 Adopted in 2008, A.R.S. § 13–703(A) reads as follows:

A person shall be sentenced as a category one repetitive offender if the person is convicted of two felony offenses that were not committed on the same occasion but that either are consolidated for trial purposes or are not historical prior felony convictions.

At sentencing, the trial court noted that because Loney was convicted of two felony counts committed on separate occasions but consolidated for trial, he was subject to the repetitive offender sentencing enhancement for both convictions. The court therefore sentenced Loney as a category one repetitive offender on Count Two and Count Three.

¶ 16 Loney argues the trial court erred because it failed to apply § 13–703(A) consistently with the previous version of the statute, which provided as follows:

A person who is convicted of two or more felony offenses that were not committed on the same occasion but that either are consolidated for trial purposes or are not historical prior felony convictions as defined in § 13–604 shall be sentenced, *for the second or subsequent offense,* pursuant to this section.

1999 Ariz. Sess. Laws, ch. 261, § 10 (former A.R.S. § 13–702.02(A)) (emphasis added). Loney thus contends he should have been subject to sentencing as a repetitive offender on only one of his convictions. The State counters that the legislature's decision to omit the "second or subsequent offense" language evidences clear legislative intent that "all convictions" are subject to the repetitive

sentencing provisions of § 13–703(A). To resolve this conflict, we apply recognized principles of statutory construction to determine the legislature's intent when it adopted § 13–703(A) in 2008. *State v. Medrano–Barraza*, 190 Ariz. 472, 474, 949 P.2d 561, 563 (App. 1997) ("When interpreting a court rule or statute, we seek to ascertain the framers' intent.").

¶ 17 "Our primary goal in construing a statute is to determine and give effect to the intent of the legislature." *State v. Barraza*, 209 Ariz. 441, 444, ¶ 10, 104 P.3d 172, 175 (App.2005). We look first to the statute's language because we expect it to be "the best and most reliable index of a statute's meaning[.]" *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991).

¶ 18 Nothing in the text of § 13–703(A) necessarily supports the State's view as to how the statute should be applied. The relevant portion of § 13–703(A) merely provides that a person shall be sentenced as a repetitive offender if he is convicted of two felony counts that are consolidated for purposes of trial.[3] The plain language of the statute does not require treating the person as a repetitive offender for both counts nor does it expressly authorize the trial court to take such action. At the same time, however, the statute's plain language does not prohibit the court from opting to take such action. Given the latent ambiguity in the statute's language, we find it necessary to turn to the legislative history. *See Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) (noting that when the statute's language is not clear, we determine legislative intent by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose).

¶ 19 We recognize the principle that when the legislature has enacted a new version of a statute, it is aware of existing statutes, and "we presume the legislature intends to change the law when it substantively changes the language of a statute." *Washburn v.*

---

**3.** The statute also provides for repetitive offender enhancement for those felonies that "are not historical prior felony convictions." A.R.S.

§ 13–703(A). That portion of the statute is not relevant to the question before us.

*Pima County,* 206 Ariz. 571, 576, ¶ 11, 81 P.3d 1030, 1035 (App.2003) (citation omitted). However, "it is also well established that even where statutory language is clear and unambiguous, we will not employ a plain meaning interpretation [that] would lead to … a result at odds with the legislature's intent." *State v. Estrada,* 201 Ariz. 247, 251, ¶ 19, 34 P.3d 356, 360 (2001) (internal quotations and citation omitted).

¶ 20 In this case, although the legislature modified the language of § 13–702.02 when it enacted § 13–703(A), we are confident in saying that the legislature did not intend the omission of "second or subsequent offense" to affect the substantive application of the statute. The legislature plainly manifested its actual intent when it stated that the legislation creating § 13–703(A) was intended only to "reorganize title 13, chapters 6 and 7, Arizona Revised Statutes, for the purpose of simplifying the criminal sentencing laws." H.B. 2207, 2008 Ariz. Sess. Laws ch. 301, 161 (2d Reg. Sess.). The legislature expressly noted that the enactment was "not intended to make any substantive changes to the criminal sentencing laws except for very limited adjustments to the sentence length for repetitive offenders to account for combining §§ 13–604 and 13–702.02, Arizona Revised Statutes, as repealed by this act." *Id.* The clear legislative purpose demonstrates that § 13–703(A) did not substantively change the relevant provisions of § 13–702.02; therefore, the repetitive offender enhancement may be applied only to the second or subsequent offense, as originally stated in § 13–702.02. *See Calik v. Kongable,* 195 Ariz. 496, 501, ¶ 20, 990 P.2d 1055, 1060 (1999) ("Courts should avoid 'hypertechnical constructions that frustrate legislative intent.'") (citation omitted).

¶ 21 Additionally, the State's interpretation of the statute would lead to absurd results. The State argues that § 13–703(A) "makes no distinction between two felony offenses—*both* are subject to sentencing under A.R.S. § 13–703." If that were the case, a defendant charged with two counts that were consolidated for trial would be subject to sentencing enhancement as a repetitive offender on both charges, but if separate trials were held, the enhancement would apply only to one of the charges. We cannot presume the legislature intended such a result. *See Medrano–Barraza,* 190 Ariz. at 474, 949 P.2d at 563 (recognizing the presumption that "the framers of the statute did not intend an absurd result").

¶ 22 Based on our analysis, the trial court imposed a sentence on Count Two that violates A.R.S. § 13–703(A). Accordingly, the sentence imposed by the trial court was unlawful and constitutes fundamental error. *See State v. Kasic,* 228 Ariz. 228, 231, ¶ 15, 265 P.3d 410, 413 (2011) ("[I]mposition of an illegal sentence constitutes fundamental error."). The court's failure to correctly sentence Loney on Count Two as a first-time felony offender pursuant to A.R.S. § 13–702(D) (2012) prejudiced Loney, as he would have been eligible for probation. *See State v. Joyner,* 215 Ariz. 134, 144, ¶ 32, 158 P.3d 263, 273 (App.2007) (holding that a trial court's failure to correctly apply a sentencing statute prejudiced the defendant).

## CONCLUSION

¶ 23 Based on the foregoing, we affirm Loney's convictions. We also affirm the sentence imposed as to Count Three, but we vacate the sentence for Count Two and remand for resentencing.

CONCURRING: LAWRENCE F. WINTHROP and JOHN C. GEMMILL, Judges.